IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| CHRISTOPHER TORRES | § | |
| v. | § | CIVIL ACTION NO. 6:17cv196 |
| BRAD LIVINGSTON, ET AL. | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Plaintiff Christopher Torres, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. This Court referred the case to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are former TDCJ-CID Director William Stephens, Regional Director Kelvin Scott, Warden Edgar Baker, Major Todd Funai, Lt. Frances Sims, and Officer Jonathan Endsley.

## I. Background

Torres states that he was a support services inmate (SSI) at the Michael Unit, working in the administrative segregation department. He explains that on the day in question, June 27, 2015, there were supposed to be six SSI's on his work shift, with one assigned to each pod, A through F.

Torres states that he was assigned to work on F Pod that day. After he finished helping the floor officer feed the inmates, he left to get some hypercaloric snacks for the diabetic inmates on the pod. As he passed by D Pod on his way to the kitchen, Officer Endsley asked him to come help feed the inmates on that pod because there was no SSI on D Pod that morning.

1

According to Torres, Officer Endsley did what most of the officers do doing feeding time. He stated that Endsley would open the food tray slot in the door of each cell, one right after the other, and then wait at the end of the row. The SSI would hand each prisoner a food tray through the opened food slot, or leave it on the slot door if the prisoner was not at the slot. The SSI would then come back and pour drinks as the inmates held their cups out of the food slot. Torres states that the food slot is about five inches wide by 18 inches long.

While the food slots were open, Torres states that the prisoners would often ask the floor officer to pass items such as books, newspapers, magazines, photo albums, or food back and forth between the cells. When this happened, he asserts that the floor officer would normally tell the prisoners to have the SSI do it for them, so the SSI working on the floor would pass along whatever the prisoners requested.

Once the food and drink was given out and all of the requested items were passed, Torres states that the floor officer would walk by and close all of the food slots. The floor officer and the SSI would then go to the next row of cells and repeat the procedure. Torres states that the supervisors were not present during feeding, but would come make rounds afterwards. There was no supervisor present on June 27, 2015, when he began helping Officer Endsley feed D Pod.

On that date, Torres states that he and Officer Endsley fed One Row and went up to Two Row. Officer Endsley opened the food slot for an inmate named Angel Sanchez. Sanchez reached out of the slot and pointed to some pictures on the floor outside of his cell, asking Officer Endsley to get them for him. Officer Endsley replied "the SSI will get them for you. Ask him."

Torres states that he handed Sanchez his food tray and Sanchez asked him to get the pictures. When he reached down to get them, Torres states that Sanchez stabbed him in the neck with what appeared to be a two-foot long pole with a four-inch sharpened nail in it. As a result, he had to be airlifted to the hospital in Tyler.

Between June and September of 2015, Torres asserted that his mind was clouded and he had problems eating and drinking at first. He stated he has almost regained his voice back but still coughs every half hour and must constantly clear his throat, resulting in severe headaches.

Torres contended that when he began work as an SSI, he was never told that TDCJ-CID has policies on properly feeding inmates in administrative segregation, nor that he could be attacked through a food slot when it was open. He stated that he believed he had to help officers feed the prisoners and there was never any posted rule prohibiting SSI's from helping officers feed the inmates.

According to Torres, Officer Endsley had just started working in the Michael Unit administrative segregation area a few weeks earlier and fed the prisoners in this manner because Endsley and other guards are trained or authorized to do so. Torres stated that he is not the first person to be assaulted through a food slot in administrative segregation and that the supervisory prison officials knew of the risks that such an assault would take place. Furthermore, Torres claimed that Sanchez was in administrative segregation for having stabbed an officer through a food slot door. He argued that the Defendants knew of an excessive risk of harm and thus were deliberately indifferent to his safety in that they failed to take measures to guarantee that Torres could not and would not be assaulted by any prisoner in administrative segregation while he worked there.

Torres further maintained that Officer Endsley was responsible for the stabbing because the officer failed to follow the TDCJ Administrative Segregation Plan, which requires that unspecified "safety precautions" be followed in serving meals to prisoners. He asserted that each supervisor is also liable because the floor officers had followed the same procedures for years, meaning the supervisors failed to adequately supervise their subordinates to ensure that the Administrative Segregation Plan was being followed and that the subordinates were properly trained.

For relief, Torres sought nominal, compensatory, and punitive damages. He also invoked the supplemental jurisdiction of the Court for state law claims.

## II. The Defendants' Motion to Dismiss

The Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) arguing the stabbing was not foreseeable and Officer Endsley was unaware that Torres was in any sort of danger. The Defendants further contend that Torres failed to show any personal involvement by the supervisory officials and that the mere knowledge that prison is a dangerous place is insufficient to demonstrate a particularized knowledge of a substantial risk of serious harm. Finally, the Defendants argued that the Texas Tort Claims Act does not provide for recovery by the individuals employed by the State but against the governmental unit responsible for the harm.

## III. Torres' Response to the Motion to Dismiss

Torres filed a response setting out the facts and again arguing that he was not the first inmate to be stabbed through a food slot. He asserted that Sanchez stabbed him because Officer Endsley refused to take unspecified "reasonable measures" to protect him. Torres stated that the fact Officer Endsley ordered him to help feed inmates placed him within range of being stabbed and that Officer Endsley telling him to pass items for inmates was not a reasonable measure to ensure his safety. He stated that there was an indicator above Sanchez's door reading "S.A.," for "staff assaultive."

Torres further insisted that the supervisory officials failed to take reasonable measures to ensure that Sanchez could not stab him and that they failed to adequately train and supervise their subordinates or to ensure that the Administrative Segregation Plan was followed. He complained that no staff member had ever warned him that he could be assaulted through a food slot or that a policy existed on properly feeding inmates. Torres argued that assaults through food slots are so pervasive as to amount to a sufficiently imminent danger of harm, though he offered nothing to substantiate this claim.

## IV. The Report of the Magistrate Judge

The Magistrate Judge set out the facts of the case and the legal standards applicable to Rule 12(b)(6) motions to dismiss. In order to survive a motion to dismiss, the Magistrate Judge said, a plaintiff must plead factual content which allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged and which raises the right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, there must be more than a sheer possibility that the defendant acted unlawfully. *Id.* at 678. Conclusions and naked assertions devoid of further factual enhancement are not sufficient. *Id.*; *see also Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

The Magistrate Judge further stated that prison officials can be held liable for their failure to protect an inmate from injury only if they are deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official is deliberately indifferent if he knows of an excessive risk to inmate health or safety and disregards that risk. The official "knows of" the risk only if he is aware of facts from which he can infer the existence of a substantial risk of harm, and he in fact draws the inference. A showing that the official should have perceived the risk but did not is not sufficient. *Id.* at 839-40.

The Magistrate Judge looked to *Adames v. Perez*, 331 F.3d 508, 513 (5th Cir. 2003), in which a Texas prisoner was assaulted by another inmate who had escaped from his cell. A jury found in the prisoner's favor against some of the defendants, but the Fifth Circuit vacated this judgment and remanded for a new trial. In so doing, the Fifth Circuit determined that the existence of other incidents in which prisoners had escaped from their cells, in which the named defendants were not involved, did not show that the problem of such escapes was so pervasive that the defendants must have known of the danger.

The Magistrate Judge determined Torres' pleadings did not set out a claim of deliberate indifference against Officer Endsley because the Plaintiff offered nothing to suggest that Endsley knew of and disregarded a substantial risk to Torres' health or safety. Likewise, the Magistrate Judge concluded that Torres' pleadings failed to adequately allege either an actual failure to train or supervise or that any such failure amounted to deliberate indifference. The Magistrate Judge observed that Torres did not state what reasonable means or precautions he believed the supervisory Defendants should have implemented and that in the absence of a showing that Officer Endsley

committed a constitutional violation, Torres cannot sustain a claim of supervisory liability. With regard to Torres' state law claims, the Magistrate Judge stated that because Torres had not set out a viable claim under federal law, the district court should decline to exercise supplemental jurisdiction over the state law claims. The Magistrate Judge thus recommended that the Defendants' motion to dismiss be granted and that the lawsuit be dismissed.

## V. Torres' Objections to the Report

In his objections, Torres first points to a number of alleged discrepancies between his allegations and the summary of these allegations in the Magistrate Judge's Report, including, for example, the fact that while the Magistrate Judge had stated that "the floor officer would walk by and close all the food slots," Torres had alleged that the floor officer would "quickly come by and quickly close every food slot one right after another." A review of the pleadings shows that the Magistrate Judge adequately summarized Torres' allegations and the purported discrepancies to which Torres points are not so significant as to warrant rejecting the Report.

Torres asserts that it is long-standing, pervasive, and well-documented that inmates have weapons in their cells and attack people through the food slots, pointing to *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. at 910, 166 L.Ed.2d 798 (2007), *Gerber v. Sweeney*, 292 F.Supp.2d 700 (E.D.Pa. 2003), and *Hill v. Snyder*, 2015 U.S. Dist. LEXIS 83845, 2015 WL 3948863 (S.D. Ind., June 29, 2015). As a result, he contends that each defendant was deliberately indifferent to Torres' safety because they "failed to make and/or take adequately reasonable measures (which includes having such adequate reasonable measures adequately enforced by each defendant) to guarantee that Torres could not and would not be attacked by any inmate confined in administrative segregation while Torres was assigned to work there."

Torres argues that people being attacked through food slots is "long-standing and pervasive throughout TDCJ" so as to constitute a sufficiently imminent danger likely to cause harm, which Officer Endsley was obligated to guard Torres from but failed to do so.

Torres contends that Officer Endsley knew that Torres was not the first inmate to get assaulted through a food slot and that inmates have weapons in their cells, although he fails to explain his basis for this assertion regarding Officer Endsley's knowledge. *Adames*, 331 F.3d at 513 (evidence that some state inmates had escaped from their cells did not show a "longstanding and pervasive problem" of which the prison officials must have been aware).

Although Torres repeatedly asserts that inmates stabbing officials or other inmates through the food slot is a "longstanding and pervasive problem," he offers nothing to substantiate this contention other the conclusory assertion itself. As the Magistrate Judge stated, research has not uncovered any other cases in the State of Texas in which a prisoner brought suit complaining that another inmate assaulted him through the food slot. None of the three cases cited by Torres - *Jones*, *Gerber*, or *Hill* - involve prisoners assaulting other prisoners or guards through the food slots in their cell doors, nor are any of these cases from the State of Texas.

Torres argues that the Magistrate Judge's Report "never disputes Torres' factual allegations that Lt. Sims, Major Funai, and Warden Baker knew that unit-wide, region-wide, system-wide, and nation-wide, ad.seg. inmates have weapons in their cells and that ad.seg. inmates attack people through the food slots." The fact other assaults may have happened in other states or at other units in the past does not show this was a long-standing and pervasive problem of which the prison officials must have been aware, and Torres has offered nothing beyond conclusions to show that the officials must have known of a sufficiently imminent danger. *Adames*, 331 F.3d at 513.

Torres complains that no staff member ever warned him about attacks from other inmates through food slots, but fails to show how the lack of such a warning amounted to deliberate indifference to his safety rather than at most mere negligence or carelessness. Furthermore, as the Magistrate Judge observed, Torres states that he saw Sanchez put his whole arm through the food slot as Sanchez gestured toward the pictures on the floor; thus, Torres was necessarily aware that Sanchez could reach out of the food slot if he wished.

Torres complains that there was no posted rule prohibiting SSI's from handing food trays to inmates in administrative segregation cells or from pouring drinks into their cups, but he offers nothing to suggest that any such prohibition exists at all, much less that the failure to have such a prohibition amounts to deliberate indifference. He states that he should not have to identify what "reasonable measures" he believes should be taken to ensure that he cannot and will not be assaulted, although he faults the Defendants for failing to implement such measures.

**VI. Discussion**

Torres' claims are based on the assertion that the Defendants were deliberately indifferent to his safety. The Fifth Circuit has held that prison officials have a duty to protect inmates from violence at the hands of other prisoners, but not every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995). The plaintiff prisoner must prove both that he is incarcerated under conditions "posing a substantial risk of serious harm" and that the prison official's state of mind is one of "deliberate indifference" to the inmate's health or safety. *Id.* at 401, *citing Farmer*, 511 U.S. at 837. Prison authorities must protect not only against current threats, but also must guard against "sufficiently imminent dangers" that are likely to cause harm "in the next week or month or year." *Id.* at 401.

In *Farmer*, the Supreme Court explained that

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. ...
>
> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837-38; *see also Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).

Those allegations in Torres' pleadings which are factual and not conclusory, when taken as true, do not set out factual content allowing the Court to draw the reasonable inference that the defendants are liable for the misconduct alleged and which raise the right to relief above the

speculative level. His pleadings do not show that any of the named Defendants were deliberately indifferent to his safety under the standards set out by the Supreme Court in *Farmer* because these pleadings are insufficient to shown that Officer Endsley or the supervisory officers must have known of an imminent danger posed by the fact that Torres was helping to feed inmates on D Pod. *Iqbal*, 556 U.S. at 678 (threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient). Torres' objections are without merit.

## VII. Conclusion

The Supreme Court has stated that where the defendants have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendants' challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid cause of action. This adversarial process also crystallizes the pertinent issues and facilitates appellate review of a trial court dismissal by creating a more complete record of a case. *Neitzke v. Williams*, 490 U.S. 319, 329-30, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As the Magistrate Judge correctly observed, Torres was given a meaningful opportunity to respond by the Defendants' motion to dismiss, giving him the chance to reply to this motion or to amend his complaint. In response, Torres filed a lengthy and detailed reply to the motion to dismiss. The Magistrate Judge reviewed the pleadings and issued a Report recommending that the lawsuit be dismissed, to which Torres filed objections.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Plaintiff objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.") Upon such *de novo* review,

the Court has determined the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are overruled and the Report of the Magistrate Judge (docket no. 30) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the Defendants' amended motion to dismiss (docket no. 26) is **GRANTED** and the above-styled civil action is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. It is further

**ORDERED** that any state law claims raised by the Plaintiff are **DISMISSED WITHOUT PREJUDICE** to their refiling in state court, with the statute of limitations suspended for 30 days following the date of entry of final judgment. 28 U.S.C. §1367(d). Finally, it is

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED**.

So **ORDERED** and **SIGNED August 24, 2018.**

_____
Ron Clark, Senior District Judge